UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN BANCHS RIVERA,

                       Plaintiff,

                                        Case # 09-CV-6621-FPG

v.

                                        DECISION AND ORDER

THE CITY OF ROCHESTER,
CHIEF OF POLICE JAMES M. SHEPPARD,
SERGEANT ROBERT MATTICK,
INVESTIGATOR FREEMAN R. SHAW, IV, and
OFFICER MARTIN M. LOGAN,
In their individual capacities,

                       Defendants.

## INTRODUCTION

*Pro se* Plaintiff John Banchs Rivera brings this action under 42 U.S.C. § 1983, alleging that the Defendants violated his civil rights. Specifically, Plaintiff alleges causes of action for false arrest, false imprisonment, malicious prosecution, excessive force and retaliation that relate to a search warrant that was executed at his residence on April 3, 2009, and the resultant state court prosecution that followed. The Defendants are three then-employees of the Rochester Police Department, Investigator Freeman Shaw, Officer Martin Logan, and Sergeant Robert Mattick. The Plaintiff also lists as Defendants the City of Rochester, as well as former Chief of Police James Sheppard. Presently before the Court are the Defendants' Motion for Summary Judgment (Dkt. ## 57, 62), and the Plaintiff's Motion regarding a conflict of interest (Dkt. # 65).

DISCUSSION

I.    Conflict of Interest

Turning first to Plaintiff's Motion regarding a conflict of interest, Plaintiff argues that because a City of Rochester attorney is jointly representing the named Defendants, that each of those Defendants suffers from a conflict of interest.  Plaintiff further requests that either (1) the Defendants be required to obtain separate counsel; (2) that their current attorney, John Campolito from the City of Rochester Corporation Counsel's Office, be disqualified; or that (3) the Defendants produce to the Plaintiff written waivers of any conflict of interest.

Joint representation is common in situations like this where the interests of certain parties are aligned, and there is nothing improper about that arrangement.  The mere fact of joint representation does not raise the risk of trial taint when "an attorney represents two or more clients who are similarly situated with regard to a lawsuit." *Felix v. Balkin,* 49 F. Supp. 2d 260, 270 (S.D.N.Y. 1999).  In such a situation, "each client must reasonably expect that facts learned from one will be available in defense of the other[;]" indeed, "[w]ithout such a common basis, there cannot be a joint representation." *Id.* (citations omitted); *see also Kempner v. Oppenheimer & Co., Inc.,* 662 F. Supp. 1271, 1277–78 (S.D.N.Y. 1987); *Rosman v. Shapiro,* 653 F. Supp. 1441, 1446 (S.D.N.Y. 1987)

The Supreme Court has further held that "permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation … Joint representation is a means of

insuring against reciprocal recrimination. A common defense often gives strength against a common attack." *Holloway v. Arkansas,* 435 U.S. 475, 482–483 (1978) (citation omitted).

There is nothing improper about Mr. Campolito's joint representation of the Defendants in this case. Moreover, there is no basis to disqualify Mr. Campolito, and the Plaintiff has no right to receive waivers from any of the Defendants. While the Defendants could elect to retain separate counsel, that is a matter solely within their purview. If any of the Defendants believe that they have an antagonistic defense from that of their co-Defendants, they must raise that with the Court, and appropriate action will be taken at that time. At this stage, there is simply no evidence to suggest that any conflict exists, and in fact, the parties' submissions demonstrate exactly the opposite, in that the Defendants all deny the Plaintiff's allegations, and are unified in their defense.

The second part of the Plaintiff's motion argues that because then-Sergeant Mattick is now a Court Security Officer ("CSO") for the United States Marshals Service and is assigned to the Rochester Federal Courthouse, he should essentially be placed on leave for the pendency of this action. I disagree.

While Plaintiff argues that he "fears in [sic] being harassed by Mr. Mattick's [sic] and his fellow officer friends," such an allegation is completely speculative and wholly without support. Plaintiff offers no factual support for his claims, and the simple fact that Mattick is now employed in this courthouse provides no basis for the relief Plaintiff seeks.

Indeed, situations have arose before where current CSOs were involved in prior trials before this Court, and that can easily be handled. For example, during any trial of this matter, CSO Mattick would not be assigned to this Courtroom, nor would he be around any of the

participants in this case in his current role as a CSO, which would alleviate any potential problem.

For all of the foregoing reasons, Plaintiff's applications regarding conflicts of interest (Dkt. # 65) are denied in all respects.

II.   Defendants' Motion for Summary Judgment

The standard for ruling on a summary judgment motion is well known.   A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).   "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).   In order to establish a material issue of fact, the non-movant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).   Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).   If, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that

4

party, a grant of summary judgment is appropriate.  *Scott*, 550 U.S. at 380 (citing *Matsushita*, 475 U.S. at 586-587).

### A. Chief James Sheppard

It is well settled that a supervisory defendant may not be held liable in a § 1983 action on a theory of *respondeat superior*.  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted).  "In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal v. Ashcroft*, 556 U.S. 662, 677 (2009).  In other words, "supervisor liability depends on a showing of some personal responsibility," *Hernandez,* 341 F.3d at 144, and a plaintiff must plead sufficient facts to establish the personal involvement of each particular defendant in the alleged violation.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

In order to establish the personal involvement of a supervisory official, a plaintiff can demonstrate that: (1) the defendant participated directly in the alleged conduct; (2) the defendant did not remedy a wrong after learning of it through a report or appeal; (3) the defendant formed a policy or custom under which the conduct transpired, or allowed the policy or custom to continue; (4) the defendant's supervision of subordinates who engaged in the conduct was grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of inmates by failing to act on information showing that the conduct was occurring.  *Colon*, 58 F.3d at 873.

In this case, there are no such allegations against Chief Sheppard that would demonstrate his personal involvement in the alleged acts.  Perhaps more importantly, and as the Defendants

point out, Chief Sheppard did not become the Chief of the Rochester Police Department until November 11, 2010.   The Complaint in this case was filed on December 7, 2009, or approximately a year before Chief Sheppard was in office.   While the Plaintiff argues in his papers that "no allegations needed to be made to name the Chief of Police in a suit of a person-in-charge of the Rochester Police Department," that is clearly not the law.   In fact, as previously stated, the opposite is true, in that there is no *respondeat superior* liability in § 1983 actions, and to maintain an action, personal involvement by each individual defendant is required.   Since no such facts exist to show any involvement by Chief Sheppard in the complained of acts, Chief Sheppard is dismissed from this lawsuit.

> ### B.   False Arrest and Malicious Prosecution

While Plaintiff mentions both "false arrest" and "false imprisonment" claims in his papers, I will refer to them collectively as "false arrest," because "false arrest is considered a kind of false imprisonment, and the claims are analyzed in an identical fashion." *Smith v. City of New York*, No. 13 CV 2395 (SJ)(RER), 2014 WL 4904557, at *3 (E.D.N.Y. Sept. 30, 2014), citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

The standard for such a claim is well settled.

> To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).   Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.   *Id.*   Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.*

> Even if probable cause to arrest is ultimately found not to have
> existed, an arresting officer will still be entitled to qualified
> immunity from a suit for damages if he can establish that there was
> "arguable probable cause" to arrest. Arguable probable cause
> exists "if either (a) it was objectively reasonable for the officer to
> believe that probable cause existed, or (b) officers of reasonable
> competence could disagree on whether the probable cause test was
> met." *Golino [v. City of New Haven],* 950 F.2d 864, 870 (2d Cir.
> 1991); *see also Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir.
> 2002) (stating that "in situations where an officer may have
> reasonably but mistakenly concluded that probable cause existed,
> the officer is nonetheless entitled to qualified immunity.")
> (citations omitted); *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d
> Cir. 2000). Thus, the analytically distinct test for qualified
> immunity is more favorable to the officers than the one for
> probable cause; "arguable probable cause" will suffice to confer
> qualified immunity for the arrest.

*Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004).

Further, in deciding whether an officer's conduct was "objectively reasonable" for purposes of qualified immunity, courts look to the information possessed by the officer at the time of the arrest, but "do not consider the subjective intent, motives, or beliefs" of the officer. *Connecticut ex rel. Blumenthal v. Crotty,* 346 F.3d 84, 106 (2d Cir. 2003) (citation omitted).

Plaintiff argues that the Defendants are not entitled to qualified immunity regarding the search of his residence on April 3, 2009 because, he alleges, (1) the search warrant for his residence was defective, and (2) his arrest was not supported by probable cause.

Regarding the search warrant, Plaintiff's argument is essentially that certain information contained within Officer Logan's affidavit in support of the search warrant was not correct. To succeed in this challenge, Plaintiff must demonstrate that the misstatements and omissions were "necessary to the finding of probable cause" *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991) (quoting *Franks v. Delaware,* 438 U.S. 154, 156 (1978)). Under the so-called "corrected affidavits doctrine" courts look to the hypothetical contents of a "corrected"

7

application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the search as a matter of law. *See Loria v. Gorman,* 306 F.3d 1271, 1289 (2d Cir. 2002); *Smith v. Edwards,* 175 F.3d 99, 105 (2d Cir. 1999); *see also Franks,* 438 U.S. at 171–72.

After this analysis, if there remains an objective basis to support arguable probable cause, remaining factual disputes are not material to the issue of qualified immunity and summary judgment should be granted to the defendant on the basis of qualified immunity. It is only if the corrected affidavit would not "support a reasonable officer's belief that probable cause existed" would the identified factual disputes be material to resolving the issue. *See Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir. 1992) (citation omitted).

Plaintiff previously challenged the search warrant at issue during his state court prosecution, similarly arguing that the warrant affidavit was false or incomplete, and that the warrant was not supported by probable cause. In ruling on that application, Monroe County Court Judge Brian M. McCarthy held that:

> In the instant case, there is sufficient evidence of probable cause based upon Officer Logan's observations and actions in March, 2009. The CI merely introduced Logan to the person who ultimately took Logan and the CI to 61 Teralta St. where the cocaine was purchased by Officer Logan, not the CI. The defendant does not allege that the CI does not exist. Therefore, the defendant's motion for a *Darden* hearing is denied.
>
> The defendant has also moved for a *Franks* hearing alleging false statements were included in the affidavit that the issuing judge relied on in signing the search warrant. *Franks v. Delaware*, 98 US 154 (1979) set the standard for judicial review, when allegations of deliberate falsehood or reckless behavior arise in a search warrant affidavit. *Franks* at 171. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine." *Id.* at 171-172. If the material alleged to be false is set aside, the court must then look see if the remaining part of the affidavit is

8

> sufficient to support probable cause, if so, "no hearing is required."
> *Id*. at 172.
>
> The defendant alleges that several statements in the search warrant
> affidavit from Officer Logan are erroneous.  The statements refer
> to the defendant being in possession of large sums of money and
> that he was shot when purchasing a kilo of cocaine.  Setting aside
> the statements that defendant alleges are erroneous, this Court
> finds that the remaining content of the affidavit supports probable
> cause to believe cocaine would be found at 61 Teralta St.
> Therefore, defendant's motion for a *Franks* hearing is denied.

I agree with Judge McCarthy's analysis, and for the same reasons, I find that the warrant was indeed supported by probable cause.

Regarding Plaintiff's argument that probable cause did not exist to support his arrest, the only admissible evidence in the record before me demonstrates that the executing officers recovered two quantities of cocaine in the Plaintiff's residence.  While the Plaintiff was later acquitted at his state court trial – apparently due to a discrepancy in the recorded amounts of cocaine recovered and tested as a result of the search warrant – that does not change the fact that cocaine was recovered from the Plaintiff's residence.  While the Plaintiff asserts – in conclusory fashion and without any proof in admissible form – that the officers somehow framed him, such an unsupported claim is insufficient at the summary judgment stage.

In addition, it is undisputed that a Monroe County Grand Jury indicted the Plaintiff on May 12, 2009 for the felony violation of possession of a controlled substance in the second degree.  This additional finding of probable cause by the Grand Jury also serves to defeat Plaintiff's false arrest claims, since an indictment by a grand jury "creates a presumption of probable cause." *Savino v. New York,* 331 F.3d 63, 72 (2d Cir. 2003).

Simply put, the discovery of quantities of cocaine at his residence plainly provided probable cause to arrest the Plaintiff, and that probable cause determination is buttressed by the Grand Jury's later finding of probable cause.  As a result, because probable cause existed – or at

the very least, arguable probable cause existed – the officers are entitled to summary judgment on the false arrest claims because they have qualified immunity, and the false arrest claim is therefore dismissed.

Regarding the cause of action for malicious prosecution, a Plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for the proceeding; and (4) actual malice as a motivation." *Drummond v. Castro,* 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007) (citing *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir. 1995)).  As in claims of false arrest, probable cause is a complete defense to malicious prosecution claims.  *Manganiello v. City of New York,* 612 F.3d 149, 161–62 (2d Cir. 2003) (citing *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003)).

Because I have already determined that probable cause indeed existed, the malicious prosecution cause of action fails as well, and is therefore dismissed.

C.     Excessive Force Claim

Plaintiff alleges that Investigator Shaw and Sergeant Mattick utilized excessive force against him during the execution of the search warrant at his residence on April 3, 2009 which exacerbated a prior injury, and required him to undergo shoulder surgery.  He further claims that he was already injured at the time of the warrant execution, and that although he informed the executing officers of this fact, they nevertheless utilized excessive force against him.  While the Defendants deny these allegations and argue that any force they may have utilized was necessary under the circumstances, this Court cannot make credibility determinations or resolve factual disputes at the summary judgment stage.  Since there are material factual disputes regarding any

force utilized, Defendants' Motion for Summary Judgment on the excessive force cause of action is denied.

D.    Retaliation Claim

The Defendants have moved for summary judgment on the Plaintiff's cause of action alleging retaliation in violation of his First Amendment rights, arguing that his claim is unclear, and in any event, insufficient.   The Plaintiff has not addressed this cause of action in his response, and while I could deem the claim abandoned, I will nonetheless address the merits.

As best as this Court can tell, the Plaintiff is alleging that he was arrested by the Defendants in retaliation for his prior complaint to superiors at the Rochester Police Department regarding the arresting officers.  In order to succeed on such a claim, Plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) the Defendants' actions were motivated or substantially caused by his exercise of that right; and (3) the Defendants' actions effectively chilled the exercise of his First Amendment right.  *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir. 1998).

As to the second element, because the Defendants had probable cause to arrest Plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken.  *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citations omitted).  In *Hartman v. Moore*, 547 U.S. 250, 252 (2006), the Supreme Court addressed the question of "whether the complaint states an actionable violation of the First Amendment without alleging an absence of probable cause to support the underlying criminal charge."  The Supreme Court held "that want of probable cause must be alleged and proven" in order to sustain the cause of action.  *Id.*  For the reasons previously stated, probable cause did indeed exist, and that finding is fatal to Plaintiff's First Amendment retaliation cause of action.  The retaliation cause of action is hereby dismissed.

E.     City of Rochester

Regarding the municipal Defendant City of Rochester, although municipalities are considered "persons" for purposes of 42 U.S.C. § 1983, a local government such as the City of Rochester may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 694 (1978). Municipalities are not subject to § 1983 liability on the basis of a *respondeat superior* theory. *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted).

Since the Court has dismissed all of the Plainitff's causes of action except for the excessive force claim, in order to succeed on his *Monell* claim, he must demonstrate that any alleged excessive force was taken pursuant to an official policy or custom of the City of Rochester. On this record, the Plaintiff cannot establish a claim for *Monell* liability for one simple reason: there are no facts presented to support this assertion.

Plaintiff makes no claim nor presents any facts showing that the City of Rochester enacted any official policy pursuant to which his rights were violated. Plaintiff also fails to adduce any facts showing that an official with final decision making authority enacted, formulated, or ratified any policy to utilize excessive force against citizens. Instead, he alleges a single incident in which he alleges that he was subjected to excessive force. Such an allegation

is insufficient to impute responsibility to the City of Rochester.  ("To show municipal policy by referring to only a single act, that act must have been committed by a city official 'responsible for establishing final policy with respect to the subject matter in question,' and must represent a deliberate and considered choice among competing alternatives." *Hall v. Town of Brighton*, No. 13-CV-6155T, 2014 WL 340106, at *5 (W.D.N.Y. Jan. 30, 2014), quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84 (1986)).

Because the papers submitted fail to demonstrate the existence of a municipal policy, the claims against the City of Rochester are also dismissed.

### F.    Punitive Damages Against the Defendants

The Defendants argue that although the Complaint seeks punitive damages from Defendants Shaw and Mattick, such damages are unavailable because "punitive damages are not available against…defendants in their official capacities." (Citation omitted).  While I agree that punitive damages are generally unavailable against Defendants in their official capacities, the Complaint specifically alleges in the caption that the Defendants Shaw and Mattick are being sued "in their individual capacities."  As a result, the Defendants application to eliminate any possibility of recovering punitive damages is denied.

### III.    Conclusion

For all of the foregoing reasons, the Plaintiff's Motion regarding a conflict of interest (Dkt. # 65) is in all respects DENIED.  Defendants' Motion for Summary Judgment (Dkt. ## 57, 62) is granted in part and denied in part.  Specifically, the Defendants' Motion is granted with respect to Plaintiff's causes of action against the City of Rochester and Chief Sheppard, as well as his causes of action for false arrest, malicious prosecution and retaliation, which are dismissed

with prejudice.  As Officer Logan was only named in the false arrest, malicious prosecution and retaliation causes of action, he is also dismissed from this case.   Defendants' Motion for Summary Judgment is denied regarding Plaintiff's excessive force claim, and is denied regarding their request to preclude punitive damages.

The parties shall appear on February 9, 2015 at 10:00 am, to set a trial date for the only remaining cause of action which alleges the use of excessive force.

IT IS SO ORDERED.

DATED:      Rochester, New York
            January 29, 2015

                                         _____
                                         HON. FRANK P. GERACI, JR.
                                         United States District Judge